UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NORMA MAHLER ET AL.                           CIVIL ACTION

VERSUS                                         NO. 15-2223

STEPHEN E. METZINGER, M.D., ET AL.             SECTION "G"(2)

## REPORT AND RECOMMENDATION

This is an employment discrimination action in which plaintiffs, Norma Mahler
and Tiffany Roberts Schacherl, sued Aesthetic Surgical Associates ("Aesthetic") and
Stephen E. Metzinger, M.D.  Plaintiffs allege in their complaint that both defendants are
their former employer and that Dr. Metzinger sexually harassed plaintiffs in violation of
Title VII, 42 U.S.C. § 2000e et seq., and the Louisiana Employment Discrimination Law,
La. Rev. Stat. § 23:301 et seq.  Complaint, Record Doc. No. 1.  Only two months after
it was filed, the complaint was voluntarily dismissed when the presiding district judge
granted plaintiffs' Motion for Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(2).  Record
Doc. Nos. 10, 11.

Defendants filed a Motion for Attorneys' Fees and Costs.  Record Doc. No. 13.
They seek to recover from plaintiffs under the same two statutes all of their attorney's
fees and costs incurred while plaintiffs' claims were pending before the Equal
Employment Opportunity Commission ("EEOC") and this court, and damages for alleged
injury to defendants' reputations, on the grounds that they are prevailing parties in the

litigation and plaintiffs' lawsuit was frivolous when filed.  The motion is supported by copies of plaintiffs' EEOC charges[1] and the EEOC's notices of dismissal of the charges. Defendants assert in their memorandum that they incurred more than $33,000 in attorney's fees and $528.63 in costs between February 24, 2105, when plaintiffs filed their EEOC charges, and August 18, 2015, when the instant action was dismissed.  They state that they will provide evidence of their actual fees, costs and damages if the court grants their motion.  Record Doc. No. 13-1 at p. 3 & n.9.

Plaintiffs filed a timely opposition memorandum, supported by copies of correspondence between counsel for the parties in this litigation.  Record Doc. No. 16. Defendants received leave to file a reply memorandum, Record Doc. Nos. 18, 21, 22, with two more exhibits, consisting of additional correspondence from defense counsel to plaintiffs' previous and current attorneys.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from plaintiffs' complaint, the parties' memoranda and the exhibits submitted in connection with defendants' motion for attorney's fees and costs.  None of the facts are verified by affidavits, but the following facts are assumed to be true to the extent they do not conflict.  Conflicts are noted below where they exist.

---

[1]Because the copies submitted by defendants contained unredacted dates of birth in violation of Fed. R. Civ. P. 5.2(a), the court ordered the Clerk of Court to remove Defendants' Exhibits A and B from the record and ordered defendants to file substituted, redacted copies.  Record Doc. No. 17.  Defendants complied and their Exhibits A and B are now at Record Doc. Nos. 19 and 20, respectively.

Mahler worked for Aesthetic as a medical assistant.  Schacherl was the company's business manager.   Both resigned on January 12, 2015.   Their EEOC charges, Defendants' Exhs. A and B, Record Doc. Nos. 19 and 20, and complaint allege that Dr. Metzinger created a hostile work environment by sexually harassing them.

Defendants contend in their motion that plaintiffs resigned from their employment because plaintiffs knew that defendants suspected them of fraudulently using Aesthetic's credit card and misappropriating controlled substances.  Defendants argue that plaintiffs filed their discrimination charges with the EEOC and this lawsuit in retaliation for defendants' suspicions and eventual accusations of criminal conduct.  Plaintiffs in their opposition memorandum deny any such knowledge before January 12, 2015.  They assert that they resigned from their jobs because of sexual harassment.

On February 23, 2015, Aesthetic and Dr. Metzinger sued Mahler and Schacherl in Louisiana state court for conversion, fraud and violations of the Louisiana Unfair Trade Practices Act.  Plaintiffs state in their opposition  memorandum that they had not been served with and did not know about the civil suit against them when they filed their EEOC charges, and that they were not aware of defendants' subsequent criminal complaint against them until they were arrested on May 7, 2015.  In a letter dated March 31, 2015, defendants' attorney, Magdalen Bickford, told plaintiffs' then-attorney, Frank Ippolito, in vague terms that another employee "became aware" at some unspecified time that Mahler and Schacherl "appeared to be engaging in actions in breach

3

of their legal duties to their employer." However, Bickford clearly stated that defendants did not investigate any suspicions until after plaintiffs resigned and that they uncovered no evidence of plaintiffs' allegedly fraudulent actions until then. Defendants' Exh. E, Record Doc. No. 22-1 at p. 1. At some point, defendants reported the results of their investigation to the Jefferson Parish Sheriff's Office. Plaintiffs eventually were criminally charged with unauthorized use of a movable, unauthorized possession and/or distribution of a prescription drug, theft and unauthorized possession of three prescription drugs.

According to both plaintiffs' and defendants' memoranda, Mahler and Schacherl (then known as Tiffany A. Roberts) filed sexual harassment charges against Aesthetic with the EEOC on February 24, 2015. Although the copies of the charges submitted to the court indicate that both were signed on March 30, 2015, Defendants' Exhs. A, B, the EEOC issued a "Dismissal and Notice of Rights" to Mahler dated March 20, 2015. Defendants' Exh. C, Record Doc. No. 13-4. Each plaintiff stated in her charge that Aesthetic employed less than 15 persons and each signed the charge under penalty of perjury. The EEOC stated in its "Dismissal and Notice of Rights" to Mahler that it was closing its file because Aesthetic "employs less than the required number of employees or is not otherwise covered by the statute." Id.

On March 31, 2015, Bickford wrote to Ippolito. In addition to detailing defendants' allegations that plaintiffs had defrauded Aesthetic and demanding restitution,

Bickford advised Ippolito that plaintiffs' EEOC charges were untruthful and that Aesthetic did not meet Title VII's 15-employee threshold. She stated that the EEOC had already dismissed Mahler's charge for that reason and she demanded that Schacherl withdraw her charge. Defendants' Exh. E, Record Doc. No. 22-1 at p. 3.

On May 14, 2015, the EEOC issued a "Notice of Right to Sue" to Roberts (Schacherl) at her request, stating that it was terminating its investigation because it would be unable to process her charge within 180 days from the filing date. Defendants' Exh. D, Record Doc. No. 13-5. The EEOC's notices to each plaintiff advised her that she had 90 days from the date of receipt to file suit under Title VII.

Plaintiffs, through their new counsel, Ralph Whalen, filed the instant lawsuit on June 18, 2015, which was 90 days after the EEOC sent its Dismissal and Notice of Rights to Mahler. On June 22, 2015, Bickford advised Whalen that the complaint was defective because plaintiffs knew that defendants employed less than 15 persons and because Dr. Metzinger was not subject to individual liability as a matter of law. Bickford asked Whalen to dismiss the complaint with prejudice within two days or she would formally notify him of a violation of Fed. R. Civ. P. 11. Plaintiffs' Exh. A, Record Doc. No. 16-1 at pp. 5-6; Defendants' Exh. F, Record Doc. No. 22-2. When Whalen did not respond, Bickford served him with a draft motion for Rule 11 sanctions on June 29, 2015, and advised him that he had 21 days to withdraw the complaint under that rule. Plaintiffs' Exh. A at p. 4; Defendants' Exh. G, Record Doc. No. 22-3.

Whalen again did not respond.  On July 21, 2015, Bickford advised Whalen that defendants would file their motion for sanctions unless plaintiffs dismissed their lawsuit. "In the interest of professionalism," Bickford gave Whalen an additional 21 days to dismiss the case voluntarily and stated that she would file defendants' motion for sanctions if he did not dismiss the matter by that deadline of August 11, 2015.  Plaintiffs' Exh. A at pp. 4-5.  The next day, which was 16 days before defendants' answer or other responsive pleading was due, Record Doc. No. 5, defendants filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), or in the Alternative, Motion for Summary Judgment, and noticed it for hearing on August 19, 2015.  Record Doc. No. 8.

On August 10, 2015, within the 21-day extension of time that defendants had granted, Whalen called and e-mailed Bickford to "make arrangements for dismissing" the case.  Plaintiffs' Exh. A at p. 3.  Whalen asked whether Bickford would stipulate to dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).  A stipulation or court order was necessary because defendants had filed a motion to dismiss, which precluded plaintiffs from dismissing voluntarily without a court order under Rule 41(a)(1)(A)(i).  Whalen stated that he would file a notice of dismissal as soon as he heard from Bickford.  Id. at pp. 3-4.

Bickford responded the next morning that she would be unable to talk to Dr. Metzinger until the following day and that she would "of course" not file a motion for sanctions until after she spoke with her client.  Id. at pp. 1-2.  Whalen then asked

6

Bickford whether, "since I'm dismissing the case," she would agree to let him ask the court to postpone the upcoming scheduling conference.  Bickford agreed.  Id. at p. 1.

Whalen followed up on August 12, 2015, again asking Bickford if defendants would stipulate to voluntary dismissal.  Plaintiffs' Exh. B, Record Doc. No. 16-2 at p. 1. Bickford replied on August 13th:  "Unfortunately, I am under instruction not to agree to the dismissal.  You will need to file it by motion.  My client will be seeking fees for the frivolous filing."  Id.

Two business days later, on August 17, 2015, plaintiffs filed their Motion for Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(2).  Record Doc. No. 10.  Plaintiffs stated in the motion that, after defendants filed their motion to dismiss, plaintiffs' counsel had "since confirmed that the defendants do not have the requisite number of employees required under either the relevant federal or state statutes."  Record Doc. No. 10-1 at p. 1.

Plaintiffs' motion was granted the next day, Record Doc. No. 11, two months after they filed their complaint.  The order does not state whether the dismissal is with or without prejudice.  In these circumstances, it is presumed to be without prejudice.  Fed. R. Civ. P. 41(a)(2).

II.     THE ARGUMENTS OF THE PARTIES

In their motion for attorney's fees and costs, defendants contend that this lawsuit was frivolous for two reasons.  First, plaintiffs admitted in their discrimination charges filed with the EEOC that Aesthetic employed less than 15 persons, the requisite number

for an employer to be subject to Title VII.  See 42 U.S.C. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . .").  For the same reason, defendants could not be subject to the Louisiana anti-discrimination law, which requires an employer to have at least 20 employees for a defined period of time.  See La. Rev. Stat. 23:302(2) ("The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.").

Second, defendants argue that it is well established that a supervisor like Dr. Metzinger is not subject to individual liability under either statute.  Defendants contend that they are prevailing parties for purposes of Title VII because plaintiffs dismissed their complaint in response to defendants' motion to dismiss and their threatened motion for Rule 11 sanctions.  If the court awards them attorney's fees and costs, defendants ask that they also be awarded "reasonable damages incurred as a result of the claim," specifically, for injury to their reputations.  La. Rev. Stat. § 23:303(B).

Plaintiffs respond that they were not represented by Whalen when they filed their charges with the EEOC and admitted that Aesthetic employed less than 15 persons.  They state that, when they retained Whalen and he filed the instant complaint about four months after they filed their discrimination charges, "[t]here was no assurance that the

8

defendants' operations had not expanded in the interim."  Record Doc. No. 16 at p. 1. Plaintiffs had already received right-to-sue letters that contained a 90-day time limit to file suit.  Whalen advised plaintiffs to file the instant civil action to avoid losing any possible rights by imminent expiration of the limitations period.  Plaintiffs contend that they resigned because of sexual harassment and they filed suit to right a wrong, upon advice of counsel, and not to harass or retaliate against defendants.  They assert that the criminal charges were false and retaliatory on defendants' part.

Plaintiffs argue that they voluntarily dismissed their complaint once Whalen had assured himself that defendants did not have the requisite number of employees.  They contend that the delay in dismissing the case was due to the dual 21-day extensions of time granted by Bickford, to defendants' refusal to stipulate to a voluntary dismissal under Rule 41(a)(1)(A)(ii), and to Bickford's assurances that defendants would not seek sanctions while counsel worked out how to accomplish the dismissal.  If the court awards any sanctions, Whalen asks that they be assessed against him only, and not against plaintiffs, because plaintiffs filed suit based on his advice.

III.   ANALYSIS

A.   Attorney's Fees Under Title VII

Title VII has a fee-shifting provision that permits the court to award attorney's fees to the "prevailing party":  "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . .

as part of the costs . . . ."  42 U.S.C. § 2000e-5(k).  Only a "prevailing party" is entitled to an award of attorney's fees, whether the movant is a plaintiff or a defendant.

"When a plaintiff succeeds in remedying a civil rights violation, . . . he serves as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority," and usually can recover his attorney's fees from the defendant.  Fox v. Vice, 563 U.S. 826, 131 S. Ct. 2205, 2213 (2011) (quotation omitted).  "Congress sought to protect defendants from burdensome litigation having no legal or factual basis" in civil rights cases by shifting a prevailing defendant's attorney's fees to the plaintiff in certain circumstances, id., 131 S. Ct. at 2214 (quotation omitted), but a prevailing defendant must satisfy a "more rigorous standard" to obtain an award of attorney's fees than would a prevailing plaintiff because of the differing policy considerations.  Dean v. Riser, 240 F.3d 505, 509 (5th Cir. 2001) (citing Christiansburg Garment Co. v. Equal Emp'mt Opportunity Comm'n, 434 U.S. 412, 421 (1978)).[2]

> In applying [42 U.S.C. § 2000e-5(k)], the Supreme Court has determined that a prevailing plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances.  See Christiansburg . . . , 434 U.S. [at] 418. . . .  With respect to a prevailing defendant, however, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the

_____

[2]Dean involved a motion for attorney's fees under 42 U.S.C. § 1988 in a civil rights case brought under 42 U.S.C. § 1983, but the same standards apply to claims for fees under Title VII and Section 1988, and cases interpreting each statute are applicable to the other.  Richardson v. Tex-Tube Co., 843 F. Supp. 2d 699, 712 n.3 (S.D. Tex. 2012) (citing N.C. Dep't of Transp. v. Crest St. Cmty. Council, 479 U.S. 6, 20-21 (1986)); see also Dean, 240 F.3d at 507 (discussing Christiansburg, a Title VII case, in context of policies underlying fee-shifting provisions of both Title VII and Section 1988).

plaintiff continued to litigate after it clearly became so." <u>Id.</u> at 422.  The Fifth Circuit has further cautioned: "a court must 'resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'" <u>Offord v. Parker</u>, 456 Fed. Appx. 472, 2012 WL 13929, *1 (5th Cir. 2012) (quoting <u>Christiansburg</u>, 434 U .S. at 421). Instead, the court must ask whether "'the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful.'" <u>Id.</u> (quoting <u>Stover v. Hattiesburg Pub. Sch. Dist.</u>, 549 F.3d 985, 997 (5th Cir. 2008)).

  With respect to a civil rights plaintiff who voluntarily dismisses his claim with prejudice, the Fifth Circuit instructs that "a defendant is not a prevailing party . . . unless the defendant can demonstrate that the plaintiff withdrew to avoid a disfavorable judgment on the merits." <u>Dean v. Riser</u>, 240 F.3d 505, 511 ([5th Cir.] 2001).  "If this affirmative burden is met, the defendant must then establish that the plaintiff's suit was frivolous, groundless, or without merit." <u>Id.</u>  "Ordinarily, these inquiries can be resolved from the record developed in the case before the court, supplemented by affidavits and, only if necessary, testimonial evidence." <u>Id.</u>

<u>Rayford v. Sheraton Operating Corp.</u>, No. 11-2206, 2013 WL 2390001, at *1-2 (E.D. La.

May 30, 2013) (emphasis added) (footnotes omitted).

  "[P]revailing defendants <u>may</u> receive fees under the <u>Christiansburg</u> standard," but,

as indicated by the emphasized word "may," such an award lies within the court's "sound

discretion." <u>Vitale v. Ga. Gulf Corp.</u>, 82 F. App'x 873, 876 (5th Cir. 2003) (quotation

omitted) (emphasis in original) (citing <u>Equal Emp'mt Opportunity Comm'n v. Tarrant

Distribs., Inc.</u>, 750 F.2d 1249, 1250 (5th Cir. 1984)); <u>accord</u> <u>Curtis v. Bill Hanna Ford,

Inc.</u>, 822 F.2d 549, 551 (5th Cir. 1987).

Thus, in deciding a motion for attorney's fees, the court must first determine whether the movant is a prevailing party.  "Upon concluding that the movant is a prevailing party within the meaning of § 1988 [or Title VII], the court in its discretion may then decide whether the movant is entitled to a reasonable fee award."  Dean, 240 F.3d at 508 (citing Farrar v. Hobby, 506 U.S. 103 (1992); United States v. Mississippi, 921 F.2d 604, 609 (5th Cir. 1991); Hughes v. Unified Sch. Dist. # 330, 872 F. Supp. 882, 885 (D. Kan. 1994)).  If a defendant shows that it is a prevailing party, it "must then establish that the plaintiff's suit was frivolous, groundless, or without merit."  Id.

The Fifth Circuit acknowledged in Dean that

> a plaintiff whose claim appeared meritorious at the onset may encounter various changes in his litigation posture during the unpredictable course of litigation. . . .  Should such events create insurmountable problems of proof for the plaintiff, voluntarily withdrawing the complaint with prejudice would be the prudent thing to do.
>
> However, to hold that in such circumstances the defendant necessarily prevails would penalize the plaintiff for doing precisely what should be done.  In addition, potential plaintiffs' resulting fear of an increased risk of being assessed attorney's fees "'would create a disincentive to the enforcement of civil rights laws.'"  This type of chilling effect would utterly contradict Congress's intent.
>
> With respect to the more calculating plaintiff, who voluntarily withdraws his complaint "to escape a disfavorable judicial determination on the merits," the balance tips in favor of the counter policy to discourage the litigation of frivolous, unreasonable, or groundless claims.
>
> . . . .
>
> The competing policies that undergird § 1988 and the myriad circumstances that influence voluntary dismissals . . . should empower trial courts to balance the concerns for encouraging vigorous enforcement of civil rights against discouraging frivolous litigation within the specific and unique context of each individual case.  Accordingly, we hold that a

> defendant is not a prevailing party within the meaning of § 1988 when a civil rights plaintiff voluntarily dismisses his claim, unless the defendant can demonstrate that the plaintiff withdrew to avoid a disfavorable judgment on the merits.

Dean, 240 F.3d at 510-11 (quoting Marquart v. Lodge 837, 26 F.3d 842, 852 (8th Cir. 1994)) (emphasis added).

This approach both "embraces the Supreme Court's reminder that the plaintiff's ultimate failure to prevail does not automatically establish that 'the action must have been unreasonable or without foundation[,]' thereby warranting an award of attorney's fees" and "encourag[es] civil rights plaintiffs to dismiss voluntarily nonviable claims while protecting civil rights defendants from the burdens of frivolous litigation." Id. at 511 (quoting Christiansburg, 434 U.S. at 421).

In the instant case, I find that defendants are not prevailing parties, as defined by Dean. Unlike the cases cited in Dean in which the courts had held that a dismissal with prejudice, whether voluntary or involuntary, was "tantamount to a judgment on the merits" because it "gives the defendant the full relief to which he is legally entitled," Dean, 240 F.3d at 509 (quotation omitted), this court presumptively dismissed the instant case without prejudice. Fed. R. Civ. P. 41(a)(2).

Defendants argue that the dismissal should have been with prejudice. Even if judgment is eventually entered dismissing this action with prejudice, such that defendants are considered prevailing parties under the "tantamount to a judgment on the merits" test,

they have not carried their burden to demonstrate that plaintiffs withdrew their complaint to avoid an unfavorable judgment on the merits of the complaint. Plaintiffs acted prudently and expeditiously to dismiss once defendants notified Whalen that the threshold number of employees could not be met and Whalen confirmed that information within the deadlines and extensions set by Rule 11 and defendants' counsel in her correspondence with Whalen. Defendants' motion to dismiss or alternatively for summary judgment relied on the statutory threshold and the lack of individual liability for a supervisor, but did not otherwise question the adequacy of plaintiffs' complaint. Thus, it cannot be said that plaintiffs dismissed their lawsuit to avoid an unfavorable judgment on the merits of their allegations of sexual harassment. Defendants' unproven assertions that plaintiffs engaged in criminal conduct, even if true, neither negate the possibility that Dr. Metzinger sexually harassed the two women nor convince this court that plaintiffs' lawsuit is retaliatory or frivolous on the merits. Although defendants are not subject to Title VII because they do not meet a threshold requirement for applicability of the statute, plaintiffs' employment discrimination allegations have never been adjudicated and remain non-frivolous allegations.

To support their argument that this matter was frivolous from the outset, defendants cite plaintiffs' personal knowledge and admissions in their EEOC charges that Aesthetic employed less than 15 persons and Bickford's demand letters to Ippolito on March 31, 2015, and to Whalen on June 22, 2015, which provided that information.

Some ambiguity may have existed about the numerosity element of plaintiffs' claim when Whalen filed their complaint. Plaintiffs are lay persons who could not be expected to understand the legal significance of the admissions in their EEOC charges, while the EEOC's notices to them, when read together, were not unequivocal that they had no right of action on that basis. The EEOC's Dismissal and Notice of Rights to Mahler stated that the EEOC had closed its file because Aesthetic "employs less than the required number of employees or is not otherwise covered by the statute." Although Roberts (Schacherl) made the same admission about the number of employees in her charge as Mahler did, the Notice of Right to Sue sent to Roberts contained no language about that deficiency, but stated that the EEOC's file was being closed for inability to process it within 180 days. Both Notices advised plaintiffs of the very short window of 90 days within which to file a Title VII complaint after their receipt of a right-to-sue letter. By the time plaintiffs consulted Whalen, he advised them to file a complaint to avoid losing any rights by imminent expiration of the limitations period. He filed the complaint on the 90th day after the mailing date of Mahler's right-to-sue letter.

Four days later, defendants' counsel Bickford asked Whalen to dismiss voluntarily within two days or she would formally notify him of a violation of Fed. R. Civ. P. 11. Bickford served a draft motion for Rule 11 sanctions on Whalen one week later. Pursuant to that rule, plaintiffs had a "safe harbor" of 21 days to decide what to do about the offending pleading before defendants could file their Rule 11 motion. "A motion for

sanctions . . . must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2).

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation.

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments.

On July 21, 2015, after the 21-day period had expired, Bickford advised Whalen that defendants would file their motion for sanctions unless plaintiffs dismissed the lawsuit. As a professional courtesy, Bickford gave Whalen an additional 21 days to act. Defendants filed their motion to dismiss or alternatively for summary judgment the next day, effectively cutting off plaintiffs' ability to dismiss voluntarily without either a stipulation from defendants or a court order. Fed. R. Civ. P. 41(a)(1)(A).

On August 10, 2015, within the 21-day extension of time that Bickford had granted, Whalen contacted her to arrange for dismissing the lawsuit. The minor delay after that date was caused by defendants, but it was clear at that point that plaintiffs intended to dismiss voluntarily. Once Bickford notified Whalen that defendants refused to stipulate to dismissal, he promptly filed plaintiffs' motion to dismiss.

From start to finish, the lawsuit was pending for only two months, 42 days of which were within Rule 11's "safe harbor" and extension, and the final week of which was the result of Bickford's need to consult with her client and defendants' refusal to stipulate to dismissal.  An award of attorney's fees to defendants in these circumstances "would penalize the plaintiff for doing precisely what should be done," Dean, 240 F.3d at 510, and would eviscerate both the congressional intent to encourage private, vigorous enforcement of civil rights laws and the safe harbor provision of Rule 11.

On this record, I cannot find that plaintiffs withdrew their complaint to avoid an unfavorable judgment on the merits.  Therefore, they are not prevailing parties as defined by Dean.  See Medina v. Ramsey Steel Co., 238 F.3d 674, 686 (5th Cir. 2001) (affirming denial of defendants' motion for attorney's fees, even though district court had granted summary judgment because supervisor could not be individually liable); Marquart, 26 F.3d at 852 (defendant was not prevailing party for purposes of attorney's fee award in Title VII action when plaintiff voluntarily dismissed with prejudice before defendant filed any summary judgment motion on the merits); Rayford, 2013 WL 2390001, at *4, *6-7 (denying defendant's motion for attorney's fees when plaintiff's counsel undertook discovery to try to substantiate plaintiff's allegations, but "did [not] insist upon first completing all noticed depositions, or await a defensive motion for summary judgment, before [orally] communicating his desire to dismiss" and providing defense counsel with a proposed motion to dismiss the next business day; denying defendant's motion for

17

sanctions under Rule 11 and 28 U.S.C. § 1927 because "Plaintiff's counsel had little choice but to rely on Plaintiff's recollection of and representations regarding . . . pertinent events, until . . . written discovery was completed and depositions commenced. . . . Plaintiff's counsel did [nothing] other than to properly advise Plaintiff relative to apparent problems of proof revealed during the course of discovery, resulting in" a prompt voluntary dismissal.); cf. Fox v. Vice, 594 F.3d 423, 426-27 (5th Cir. 2010), vacated and remanded on other grounds, 563 U.S. 826 (2011) (affirming award of attorney's fees when plaintiff never filed a motion to dismiss voluntarily, but allowed the case to proceed for more than eighteen months before defendants filed a motion for summary judgment and plaintiff conceded in response that his claims lacked legal merit); Richardson v. Tex-Tube Co., 843 F. Supp. 2d 699, 706 (S.D. Tex. 2012) (defendant was prevailing party entitled to attorney's fees when plaintiff voluntarily dismissed with prejudice two years after suit was filed, after he was deposed and could cite no facts in support of his allegations, and when his lawsuit was time-barred when filed).

Finally, even if defendants in the instant case are considered to be prevailing parties under Dean, I cannot find on this record that they have met their burden to show that plaintiffs' claims were so frivolous, unreasonable, or groundless, or that they continued to litigate after the claims clearly became so, to warrant an award of attorney's fees to defendants.  Defendants have cited no authority, and my research has located none, for the proposition that a prevailing defendant is entitled to recover its fees for time

spent responding to discrimination charges filed with the EEOC. As to plaintiffs' civil action, as previously discussed, the extremely short 90-day period in which to file a Title VII lawsuit factored into Whalen's advice that plaintiffs should file to avoid any limitations bar. The right-to-sue letters, read together, created some ambiguity when one letter stated that Aesthetic was not covered by Title VII and the other said nothing of the kind. In these circumstances, it was not entirely unreasonable for Whalen to give and plaintiffs to take his advice to file suit. Plaintiffs voluntarily stopped litigating within a reasonable time frame when it became clear that the numerosity requirements of Title VII and the Louisiana Employment Discrimination Law were not met.

As to defendants' contention that they should receive an award of attorney's fees because individual supervisors are not liable as employers under Title VII or Louisiana law, Dr. Metzinger would have been named in the complaint as the person who created the hostile work environment regardless whether he was named as a defendant. With the exception of legal fees incurred in drafting the motion to dismiss him individually, Aesthetic would have incurred the same legal fees and expenses in defending the lawsuit had Dr. Metzinger not been named. Again, plaintiffs promptly dismissed their complaint against Dr. Metzinger after the "safe harbor" extensions expired.

Defendants cite Provensal v. Gaspard, No. 10-4276-SS, 2012 WL 4372360 (E.D. La. Sept. 24, 2012), aff'd, 487 F. App'x 874 (5th Cir. 2012), to support their argument

19

that plaintiffs' claims against Dr. Metzinger were legally baseless from the outset and merit a fee award.  In <u>Provensal</u>, Magistrate Judge Shushan of this court held that the

> frivolity of the claims for which attorney's fees are being sought is self-evident.  The claims for religious discrimination, slander, and defamation had no colorable basis in fact or law, the claims for intentional infliction of emotional distress were clearly prescribed, and the federal and state employment claims against [the supervisor] <u>Gaspard</u> were patently meritless because Gaspard was not plaintiff's employer.  In that those claims were obviously frivolous, the defendants are entitled to awards of fees incurred in defending against them.

<u>Id.</u> at *2.

Nonetheless, <u>Provensal</u> is not on point with the instant case.  Unlike Mahler and Schacherl, who asserted a single claim of sexual harassment and voluntarily dismissed it only two months after filing suit, the plaintiff Provensal never dismissed any of his numerous claims against either the individual or the corporate defendant.  Instead, the <u>Provensal</u> defendants were forced to file, and plaintiff opposed, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) that was granted in part as to his federal and state law discrimination claims against the individual defendant Gaspard, and many months later, a motion for summary judgment that was granted as to plaintiff's remaining claims against both defendants.   Plaintiff then "filed a patently frivolous motion for reconsideration."  <u>Id.</u> at *7.  The court awarded attorney's fees to both defendants attributable to all of plaintiff's interconnected claims, not just to the employment discrimination claims, based on this entirely unreasonable litigation history.

Therefore, even if defendants in the instant case are considered prevailing parties under Title VII, I recommend that defendants' motion for attorney's fees be denied in the exercise of the court's discretion and based on the policies underpinning Title VII and Rule 11.

B.     Award of Attorney's Fees, Costs and Damages Under Louisiana Law

"A plaintiff found by a court to have brought a frivolous claim under this Chapter shall be held liable to the defendant for reasonable damages incurred as a result of the claim, reasonable attorney fees, and court costs."   La. Rev. Stat. Ann. 23:303(B). Although defendants emphasize that the statute uses the mandatory term "shall," this court must first find that plaintiffs' claim was "frivolous."   I interpret that term to have the same meaning as under Title VII and federal case law.   In interpreting Louisiana's anti-discrimination law, Louisiana courts routinely look to federal employment discrimination law for guidance.   Provensal, 2012 WL 4372360, at *2 (citing Dinet v. Hydril Co., No. 05-03778, 2006 WL 3904991, at *3 (E.D. La. Nov. 22, 2006); Thompson v. La. ex rel. Dep't of Pub. Safety & Corr., No. 05-03329, 2007 WL 3270778, at *3 (E.D. La. Nov. 2, 2007) (citing Dinet, 2006 WL 3904991 at *3); Millon v. Johnston, No. 98-02235, 1999 WL 358968, at *2 (E.D. La. May 28, 1999)); Mitchell v. Tracer Const. Co., 256 F. Supp. 2d 520, 530 (M.D. La. 2003).

Therefore, for the same reasons stated in the preceding section, I recommend that defendants' motion for attorney's fees under the Louisiana Employment Discrimination Law be denied.

### C.     Award of Costs Under Federal Law

"Unless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." Fed. R. Civ. P. 54(d) (emphasis added).  For the reasons set out above, I find that defendants are not prevailing parties under these circumstances.  Therefore, I recommend that defendants not be awarded costs.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that defendants' Motion for Attorneys' Fees and Costs be DENIED.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this __21st__ day of September, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.